**Alex HERBAGE, Plaintiff,**

v.

**Edwin MEESE III, et al., Defendants.**

**Civ. A. No. 89–0645.**

United States District Court, District of Columbia.

Sept. 20, 1990.

Alex Herbage, pro se.

Asst. U.S. Atty. William J. Dempster, Washington, D.C., for Federal defendants.

Mark R. Joelson, Joseph P. Griffin, Mark N. Bravin, Michael R. Calabrese, Morgan, Lewis & Bockius, Washington, D.C., for British defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Pending before the Court are the federal defendants'[1] motions to dismiss, the British defendants'[2] motions to dismiss, and

1. The following defendants, represented by the same counsel, are referred to as the "federal defendants": former *Attorney General Edwin Meese, III;* Robert W. Ogren, former Chief, Fraud Section, Criminal Division, U.S. Department of Justice ("DOJ"); Robert W. Merkle, former United States Attorney, Middle District of Florida; William T. Hardy, former trial attorney, DOJ; Robert M. Twiss, trial attorney, DOJ; and Alfonso Solis, former Chief Deputy United States Marshal, Middle District of Florida.

Two other defendants will also be grouped in this category, because the disposition of this action renders their separate consideration unnecessary: Harry Layne, former inspector, U.S. Marshal Service, Middle District of Florida; and the DOJ.

2. The "British defendants" are: Douglas Hurd, the Secretary of State for the Home Department; Sir Thomas Hetherington, former Director, U.K. Department of Public Prosecutions ("DPP"); Roger Hoddinott, Detective Superin-

plaintiff's oppositions thereto. For the reasons set forth below, defendants' motions are granted and this case is dismissed.

## I. BACKGROUND

Plaintiff Alex Herbage is currently an inmate at the Federal Medical Center in Rochester, Minnesota. In 1986, Herbage, a British citizen, was indicted in the United States District Court for the Middle District of Florida on twenty-three counts of mail fraud and two counts of interstate or foreign transportation of fraudulently obtained money or property. The British government extradited Herbage to the custody of the United States in December, 1986. In August 1987, Herbage pled guilty to three counts of mail fraud and was sentenced to three consecutive five-year terms. He preserved the right to challenge the court's jurisdiction and duly appealed. In August 1988, the United States Court of Appeals for the Eleventh Circuit affirmed his conviction. *United States v. Herbage*, 850 F.2d 1463 (11th Cir.1988), *cert. denied*, 489 U.S. 1027, 109 S.Ct. 1158, 103 L.Ed.2d 217 (1989).

The plaintiff sets forth three "causes of action" (hereinafter referred to as "counts") arising from the events leading to his arrest and extradition. In the first cause of action, he alleges that defendants Meese, Ogren, Merkle, Hardy, Twiss, Hurd, Hetherington, Hoddinott, Wilson–Smith, Spokes and others conspired to violate his due process rights by knowingly and falsely stating that the United States had made a valid "provisional request" for his extradition, a necessary prerequisite to such proceedings. It was on the basis of this request—made under the United States–United Kingdom Treaty of Extradition ("US–UK Treaty")[3]—that a London Magistrate had issued the provisional warrant under which he was arrested. Because that basis is false, Herbage claims, his constitutional rights were violated.

In his second count plaintiff asserts that defendants Hardy, Hoddinott, Wilson–Smith, Spokes and unknown others conspired to ensure that defendant Hardy knowingly gave false testimony, under oath, as to the nature of United States law and the nature of the charges against plaintiff before the Magistrate who conducted the extradition hearings in London.

In his third and final count, Herbage contends that defendants Meese, Ogren, Merkle, Hardy, Twiss, Williams, Solis, Layne, and others, conspired to violate his constitutional rights by having him arrested, detained, arraigned, convicted, and ultimately sentenced for the alleged commission of offenses other than those set out in his extradition warrant, in violation of the "principle of specialty," a fundamental tenet of international law.

For relief, plaintiff seeks a declaratory judgment that all requests for the extradition of those British citizens accused of offenses under U.S. laws be made pursuant to a valid treaty of extradition and not in violation of the principle of specialty. He also requests that the Court establish two conditions for the trial of extradited individuals: that the crime be one that is extraditable under the US–UK Treaty, and that the crime be one with which he was charged in the extradition proceedings. Plaintiff further seeks a declaratory judgment detailing the invalid bases on which he was arrested and convicted. Second, he asks for a declaration that various defendants violated the laws and Constitution of the United States when they falsely and knowingly caused the provisional warrant to be issued against him. Third, he asks for a declaratory judgment that various defendants violated the laws and a treaty of the United States when they conspired to have defendant Hardy give knowingly false testimony to the Magistrate conducting the extradition hearing. Fourth, he would have the Court issue a declaration

---

tendent, Hampshire Constabulary; and Christopher Wilson–Smith and John Spokes, barristers who acted for the DPP in English court proceedings against the plaintiff.

**3.** Extradition Treaty between the Government of the United States and the Government of the United Kingdom of Great Britain and Northern Ireland, 28 U.S.T. 227, T.I.A.S. No. 8468 ("US–UK Treaty"), Art. VIII(1).

that the defendants violated his due process rights by having him arrested, charged, convicted, and sentenced for offenses other than those charged in the extradition warrant, in violation of the principle of specialty. Plaintiff also asks the Court to enjoin the defendants from "any further illegal acts or conspiracies, intended to deprive the Plaintiff of all rights due." Finally, he asks for compensatory damages in the amount of two million dollars and punitive damages in the amount of ten million dollars.[4]

## II. DISCUSSION

In viewing a motion to dismiss, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In evaluating the complaint, the court must accept as true the factual allegations set forth therein, *Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 411, 106 S.Ct. 1922, 1924, 90 L.Ed.2d 413 (1986), and draw therefrom all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### A. Federal Defendants

The federal defendants have moved to dismiss this action on the following grounds:[5] plaintiff's complaint fails to meet the requisite heightened pleading standard in cases alleging conspiracies to commit constitutional violations; plaintiff does not state a claim as required by Fed. R.Civ.P. 8(a); venue is improper in this district; the predicate of plaintiff's claim—

that his extradition occurred in violation of a treaty—is res judicata; and, lastly, in any event, defendants are protected by absolute and qualified immunity. Because, *inter alia*, the complaint fails to meet the heightened pleading requirement for constitutional claims, it must be dismissed. All other contentions have been considered but this ruling makes it unnecessary to address them, other than the issue of res judicata, *see infra*.

Conspiracy to deprive him of his constitutional rights is the gravamen of Herbage's complaint. He charges that certain federal defendants, along with certain British defendants,[6] conspired to deprive him of his rights to due process, under the Fifth Amendment, by knowingly making the false assertion that the provisional warrant had been issued in response to a valid provisional request from the United States. Plaintiff further accuses defendant Hardy, a DOJ trial attorney, of conspiring with British defendants to give false testimony concerning the nature of U.S. law to the Magistrate at the extradition hearing. Finally, Herbage claims that all the federal defendants conspired to violate his due process rights when they subjected him to the judicial process—culminating in his conviction and incarceration—for the alleged commission of offenses other than those set out in the extradition warrant, in violation of the principle of specialty.

Herbage asserts that he has stated a *Bivens* claim. *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). This case established that citizens can bring an action to recover damages for fourth amendment violations from federal officers acting in their official capacity, notwithstanding the absence of a statutory cause of action. The Supreme Court has extended this principle to plaintiffs seeking to

---

4. Mr. Herbage seeks damages only against the first thirteen defendants; he does not seek damages against the United States Department of Justice.

5. Both sets of defendants moved to dismiss this case in the summer of 1989, soon after plaintiff filed his initial complaint, and later refiled their

motions after plaintiff amended his complaint on February 28, 1990.

6. In Count I, he alleges that this "conspiracy" involved federal defendants Meese, Ogren, Merkle, and Twiss; and British defendants Hurd, Hetherington, Hoddinott, Wilson–Smith, and Spokes.

bring actions under the fifth amendment. *Reuber v. United States*, 750 F.2d 1039, 1054 (D.C.Cir.1984). However, in this circuit,

> [b]ecause conclusory allegations of unconstitutional or otherwise illegal conduct will not withstand a public official's dispositive pretrial motion, and because plaintiffs cannot expect the court's assistance in obtaining the necessary factual support, plaintiffs bringing suit against public officials generally must put forward, in their complaints or other supporting materials, greater factual specificity and 'particularity' than is usually required.

*Martin v. Malhoyt*, 830 F.2d 237, 257 (D.C. Cir.1987).

The federal defendants argue that plaintiff's allegations are insubstantial because they are unsupported by specific or sufficient facts to meet the heightened pleading standard. As they point out, "plaintiff advances the wholly conclusory proposition that federal defendants violated his constitutional rights, while failing to describe what role each of the federal defendants had in the alleged conspiracy." Federal Defendants' [First] Motion to Dismiss at 8.

Disputing this characterization of his complaint, Herbage argues first, that his complaint does in fact set forth sufficient facts. Plaintiff's Response to Federal Defendants' [Second] Motion to Dismiss ¶ 20. Second, he claims he could not plead any more specifically without discovery. Opposition to Fourteenth Defendant's Motion to Dismiss ¶ 14.

Herbage points out that the federal defendants refer to page 2 of his complaint as an illustration of the conclusory nature of his pleadings, whereas it is on page 14 that his "detailed pleading of claims made against defendants" begins. That much is accurate. And it is also true that his "causes of action" are detailed in nature. Yet, the details do not advance his case; they are woefully devoid of facts beyond

the recital of the sequence of events that led to his extradition. The specific "facts" to which he appears to refer are conclusory allegations. For example, in his first count, he avers that defendants Meese and others conspired to deprive him of his rights when to their knowledge certain statements made to the London Magistrate were false. But plaintiff Herbage does not offer any basis as how the specific federal defendants would have known they were false (accepting, arguendo, that they were), he does not set forth any facts that might even hint toward such awareness, nor, for that matter, does he link the federal defendants named in this count to the alleged falsehoods submitted to the Magistrate. He similarly fails to set forth any facts (e.g., events, statements) linking defendant Hardy, in his second count, to the British defendants in the supposed conspiracy. He also fails to specify the content of Hardy's purported false testimony and what it was that made that testimony false; and as in all the "causes of action," there is not a single fact or datum from which intent could be inferred.

 Although the Court must "ask whether the 'claim' put forward in the complaint is capable of being supported by any conceivable set of facts," the claim should "at least set forth minimal facts, not subjective characterizations, as who did what to whom and why." *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir. 1982), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). Furthermore, our circuit commands that "[m]erely conclusory allegations of unconstitutional motive, devoid of factual support, must be found lacking and be dismissed." *Hobson v. Wilson*, 737 F.2d 1, 31 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).[7]

The argument that Herbage would need discovery to develop further facts does not save his claim. Our circuit has cautioned

---

7. *See also Contemporary Mission, Inc. v. U.S. Postal Service*, 648 F.2d 97, 107 (2d Cir.1981) (complaints containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand

motion to dismiss); *Hurney v. Carver*, 602 F.2d 993, 995 (1st Cir.1979) (while pro se complaint held to less stringent standards than one drafted by attorney, court need not conjure up unpleaded facts to support conclusory allegations).

that some plaintiffs may only be able to assert broad and speculative allegations and therefore courts must not apply the rule too rigidly and must "freely give leave to amend an inadequate complaint." In the instant case, Herbage has already had the opportunity to amend his complaint; indeed, he amended his complaint many months after he had received the federal defendants' first motion to dismiss, which set forth the argument concerning the lack of specificity and particularity dooming his allegations of conspiracy.[8] *See Contemporary Mission,* 648 F.2d at 106–07, *cited with approval in Hobson,* 737 F.2d at 30.[9]

Herbage reads the Fed.R.Civ.P. 12(b)(6) standard too literally. Something stated as fact does not make it fact. "A plaintiff's bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted" for purposes of a motion to dismiss, and the plaintiff only enjoys the "benefit of all inferences that *plausibly* can be drawn from *well-pleaded* allegations of the complaint." *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987) (emphasis added, citations omitted). Herbage's allegations cannot be said to be "well-pleaded" or to admit of plausible inferences supporting a transatlantic conspiracy.

Plaintiff's conspiracy claims do not meet these exacting standards. *See Martin,* 830 F.2d at 258. This Court concludes, much as our circuit court did in *Martin,* that this case clearly does not warrant "a fishing expedition in government waters on the basis of wholly unsubstantiated charges." 830 F.2d at 257 (citation omitted).

## B. British Defendants

■ The British defendants move to dismiss on the following grounds: lack of subject matter and personal jurisdiction, insufficiency of process and service of process, nonjusticiability under the Act of State doctrine, and failure adequately to plead a cause of action. Because their first argument is persuasive, the Court need not consider the remaining grounds.

The British Defendants argue that under the mandate of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(b), 1602–1611 ("FSIA"), this Court lacks subject matter and personal jurisdiction over them and that, in any event, this action against them is precluded by the Act of State doctrine. It is beyond question that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989). Furthermore, jurisdiction over a foreign sovereign is obtainable only when a specific exception to the FSIA applies. 28 U.S.C. § 1604; *see Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493, 103 S.Ct.1962, 1971, 76 L.Ed.2d 81 (1983). Personal jurisdiction over a foreign state likewise exists only when one of the exceptions in the FSIA applies. 28 U.S.C. § 1330(b). The British Defendants have claimed sovereign immunity.[10]

In the instant case, however, before reaching the matter of whether the FSIA is applicable, it is necessary to establish that these are officials of these states, and that, as officials, they are cloaked with the same immunity as the sovereign state itself.

Plaintiff disputes that he is suing a foreign sovereign at all. He asserts that his action "is directed against the British defendants, *solely,* in their individual capaci-

---

8. *See* footnote 5, *supra.*

9. *See* 648 F.2d at 106–07 (Where there are no specific facts to support a conspiracy allegation, a district court may, in its discretion, refuse to permit discovery and grant summary judgment; courts must be particularly cautious to protect public officials from protracted litigation involving specious claims). That ruling, though made in the context of summary judgment, applies equally well in the instant case.

10. Memorandum of Points and Authorities of the British Defendants in Support of their Motion to Dismiss, Exhibit ("D.Exh.") 1 (Declaration of James Nursaw, Q.C., U.K. Treasury Solicitor and Procurator General, executed July 3, 1989). Her Majesty's Government has also filed a Diplomatic Note with the U.S. Department of State objecting to plaintiff's suit and requesting assistance in moving for dismissal of the complaint. D.Exh. 3 (Diplomatic Note No. 167 to U.S. Government from United Kingdom Government, June 27, 1989).

ty, and that the complaint is not directed, *per se*, against the British Government." Plaintiff's Response to British (Crown) Defendants' [Second] Motion to Dismiss, at 3 (emphasis original). Therefore, he claims, neither subject matter nor personal jurisdiction is lacking.

Although for the purposes of deciding a motion to dismiss the Court must accept as true all factual allegations of the complaint, plaintiff's attempt to sue the British defendants in their individual capacities does not qualify for such treatment. It is merely a characterization, and an incorrect characterization, Herbage's protests notwithstanding.

As the British defendants correctly point out, the actions of which Herbage complains are ones that those defendants could have taken only in their official capacities. These officials were acting as law enforcement officers. Indeed, it is difficult to see how these persons could be sued, and held potentially responsible, in their individual capacities for actions they took at the behest of their government or at the very least "under color of law." [11]

The essential thrust of the FSIA is towards corporate and government entities— legal yet nonnatural "persons." [12] Nowhere does the FSIA discuss the liability or role of natural persons, whether governmental officials or private citizens. Nonetheless, decisions in other federal courts, as well as reason, indicate—even if only indirectly—that the sovereign immunity granted in the FSIA does extend to natural persons acting as agents of the sovereign. For example, a district court has held that where a foreign government-owned airline enjoyed immunity under the FSIA, that immunity also shielded two airline employee defendants. *American Bonded Warehouse Corp. v. Compagnie Nationale Air France*, 653 F.Supp. 861, 863 (N.D.Ill.1987). *See also Kline v. Kaneko*, 685 F.Supp. 386 (S.D.N.Y.1988) (Mexican Secretary of Government shielded by FSIA immunity); *Rios v. Marshall*, 530 F.Supp. 351 (S.D.N.Y.1981) (Chief Liaison Officer of the British West Indies Central Labour Organization held entitled to immunity of the organization itself). This is a logical approach, for a government does not act but through its agents.

■ Furthermore, the standard for determining whether immunity is warranted does not depend on the *identity* of the person or entity so much as the *nature of the act* for which the person or entity is claiming immunity. As the committee that drafted the Act noted, the judiciary is to decide claims of immunity on the basis of standards recognized under international law. The Report notes with approval the "wide-spread acceptance of the so-called restrictive theory of sovereign immunity ... that the sovereign immunity of foreign states should be 'restricted' to cases involving *acts* of a foreign state which are sovereign or governmental in nature, as opposed to acts which are either commercial in nature or those of which private persons normally perform." H.R.Rep. 94–1487, 94th Cong., 2d Sess. 15, *reprinted in* 1976 U.S. Code Cong. & Admin.News 6604, 6613 (emphasis added). This emphasis on the *type*

---

**11.** Mr. Herbage attempts to circumvent this problem by stating that his is a *Bivens* action (one alleging a violation of a constitutional tort by a federal official, by which the official is thereby deprived of immunity, *see* the discussion above concerning the federal defendants), but, given the disposition set forth in the text, the Court need not enter the morass of jurisdictional questions raised by such a claim. As a threshold matter, it is far from clear that an alien has standing to bring a *Bivens* claim; second, it is most unlikely that a non–U.S. official is subject to a *Bivens* claim (which applies to federal but not state officials), especially since they cannot be said to be bound to uphold the U.S. Constitution. Furthermore, it is doubtful that Mr. Herbage's claim of illegal arrest rises to

constitutional dimensions, and therefore states a cause of action under *Bivens*, when convictions with such flaws are routinely upheld. *See, e.g., United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980) ("[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction"), and cases cited therein.

**12.** Concern over problems encountered in international commercial transactions prompted Congress to enact the FSIA. *See, e.g.,* 28 U.S.C. § 1602 (findings and declarations of purpose of FSIA).

of act involved as the focus for the inquiry whether immunity is proper has been consistently applied in our courts. For example, in *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371 (5th Cir.1980), the court of appeals found that a government-owned airline "acted merely as an arm or agent of the Dominican government in carrying out [its] assigned role, and, as such, is entitled to the same immunity from any liability arising from that governmental function as would inure to the government, itself." 621 F.2d at 1379.

There can be no doubt that the acts by the British defendants of which Herbage complains are "sovereign or governmental in nature." From the constable carrying out the arrest, to the detective, to the prosecutor, these defendants were performing official government functions[13] classically belonging to the discretion of the executive, and classically immune from suit. The FSIA bars Herbage's claims against the British defendants because his allegations would require an adjudication of the propriety and legality of the acts of British authorities in the performance of their official duties. *See Arango*, 621 F.2d at 1380 (5th Cir.1980) (battery claims against Dominican immigration authorities foreclosed by, *inter alia*, their immunity under FSIA).

Arguing that these defendants, acting illegally, cannot have the benefit of immunity, Herbage contends they are subject to this Court's jurisdiction. Nonetheless, these men were acting in their official capacities as agents of the British government (both on a national and local level); those actions cannot and do not subject them to liability in the courts of the United States. Since the activity complained of is governmental in nature and performed by officials of that government, this Court does not have jurisdiction over a foreign sovereign. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 307 (2d Cir.1981), *cert. de-*

*nied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

The FSIA is absolute in this regard, no matter how heinous the alleged illegalities. The Court has no authority to address the legality of the defendants' actions. Our Supreme Court has held that a lower court lacked jurisdiction over a suit challenging a foreign state's use of military force, allegedly in violation of international law, because the acts at issue fell outside any of the exceptions to sovereign immunity in the FSIA. *Amerada Hess*, 109 S.Ct. at 688. *See also Saltany v. Reagan*, 886 F.2d 438 (D.C.Cir.1989) (upholding decision that the United Kingdom was not subject to suit in U.S. courts for allowing United States to use British air bases in air strike on Libya), *cert. denied*, —— U.S. ——, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990); *Tel Oren v. Libyan Arab Republic*, 726 F.2d 774, 775 n. 1 (D.C.Cir.1984) (per curiam) (Edwards, J., concurring) (suit against Government of Libya seeking damages for terrorist attack in Israel barred by FSIA), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). Herbage's arguments are unavailing. The basis of this type of immunity doctrine is to protect the executive prerogative and not to enter into the sphere of relations between sovereign states: comity.

The events of which Herbage complains of were public acts of the government committed within its own territory. And so, additionally, this case invokes the venerable Act of State Doctrine, which precludes American courts from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964).

Furthermore, this prudential doctrine is designed to avoid judicial action in sensitive areas. It "expresses the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder rather than

---

**13.** The British defendants are agents of a "political subdivision" within the meaning of the FSIA. The House Report accompanying this law notes that the term is meant to include "all governmental units beneath the central government, including local government." H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 15 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin. News 6604, 6613.

further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere." *Sabbatino,* 376 U.S. at 423, 84 S.Ct. at 938; *see also Dayton v. Czechoslovak Socialist Republic,* 672 F.Supp. 7 (D.D.C.1986), *aff'd,* 834 F.2d 203 (D.C.Cir.1987), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1986). Thus an important and vital doctrine counsels the Court to refrain from asserting jurisdiction over the British defendants even were they stripped of the cloak of FSIA immunity.

### C. Res Judicata

■ As a final matter, it is noted that the bulk of plaintiff's complaint, and the equitable relief he requests, is barred by *res judicata.* Herbage's claims center on the illegality of his extradition, and in particular on the argument that the extradition was illegal because the US–UK Treaty provisions, as well as the warrants issued against plaintiff, violate the "principle of specialty." These contentions and their evident flaws need not be described here in detail since they were earlier determined by this Court in another suit Herbage brought. *See Herbage v. United States of America,* C.A. No. 89–1793 (D.D.C. June 21, 1990).

### III. CONCLUSION

As explained above, the Court concludes that plaintiff's complaint must be dismissed. Accordingly, it is hereby

ORDERED that defendants' motions to dismiss are granted.