Nicola BIASE, Plaintiff,

v.

Lawrence O. KAPLAN, Angelo A. Vigna,
V. Gerard Comizio, Eugene M.
Schwartz, John C. Griffin, Ellen B. Kul-
ka, Tara L. French and the Office of
Thrift Supervision, Defendants.

Civ. A. No. 93–4951 (AJL).

United States District Court,
D. New Jersey.

May 9, 1994.

Nicola Biase, pro se.

Robert M. Hanna, Asst. U.S. Atty., Newark, NJ, for defendants Lawrence O. Kaplan, Angelo A. Vigna, V. Gerard Comizio, Eugene M. Schwartz, John C. Griffin, Ellen B. Kulka and Tara L. French.

Richard L. Rennert, Trial Atty., Office of the Chief Counsel, Legal Div., Office of Thrift Supervision, Washington, DC, for Office of Thrift Supervision.

## OPINION

LECHNER, District Judge.

This is an action brought by *pro se* plaintiff Nicola Biase ("Biase") against the Office of Thrift Supervision (the "OTS") and Lawrence O. Kaplan ("Kaplan"), Angelo A. Vigna ("Vigna"), V. Gerard Comizio ("Comizio"), Eugene M. Schwartz ("Schwartz"), John C. Griffin ("Griffin"), Ellen B. Kulka ("Kulka") and Tara L. French ("French") (collectively, the "Individual Defendants"), all current or former employees of OTS. Biase alleges OTS and the Individual Defendants violated 42 U.S.C. § 1985 and his rights under the First and Fifth Amendments. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331 and 1367(a).

Currently before the court are the motions of OTS and the Individual Defendants to dismiss the action. OTS moves for dismissal of the action under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (the "OTS Motion"). The Individual Defendants move for dismissal under Fed. R.Civ.P. 12(b)(1), 12(b)(5) and 12(b)(6) (the "Individual Defendants' Motion").[1] For the reasons stated below, both the OTS Motion

and the Individual Defendants' Motion are granted and the action is dismissed.

*Facts*

On 5 November 1993, Biase filed a complaint (the "Complaint") against the OTS, Kaplan, Vigna and Comizio, seeking $500,-000,000.00 in damages, "together with the interest thereon [and] the costs and disbursements of the action." Complaint, *ad damnum* clause, ¶¶ 1–6. On 11 January 1994, Biase filed an amended complaint (the "Amended Complaint"), adding Schwartz, Griffin, Kulka and French as defendants.

According to the Amended Complaint, Biase is a resident of the state of New Jersey. *See* Amended Complaint, ¶ 3. The Amended Complaint alleges the Individual Defendants were, "at all relevant times," employees of the OTS located in Washington, D.C. and the state of New Jersey.[2] *Id.,* ¶¶ 4–9. The Amended Complaint alleges the Individual Defendants "did engage in a conspiracy with [each other] in order to deprive [Biase] of constitutional and civil rights." *Id.*

According to the Amended Complaint, in 1990, Biase purchased 9.4% of the shares in Polifly Financial Corporation ("PFC"). *Id.,* ¶ 11. Biase identifies PFC as "a New Jersey [s]avings and [l]oan [c]orporation." *Id.* According to the Amended Complaint, the "chief asset" of PFC at that time was Polifly Savings and Loan ("PSL"). *Id.* PSL was a "troubled [s]avings and [l]oan [a]ssociation operating under Consent Agreement."[3] *Id.* At the time Biase purchased shares of PFC

1. In support of the OTS Motion, the OTS submitted: a brief, dated 4 March 1994 (the "OTS Brief"); a reply brief, dated 24 April 1994 (the "OTS Reply Brief"). In support of the Individual Defendants' Motion, the Individual Defendants submitted: a brief, dated 9 March 1994 (the "Individual Defendants' Brief"); Declaration of M. Lou Guest, dated 7 March 1994 (the "Guest Decl."); Certification of Scope of Employment, dated 9 March 1994 (the "Employment Cert."); a reply brief, dated 25 April 1994 (the "Individual Defendants' Reply Brief").

In opposition to the OTS Motion and the Individual Defendants' Motion, Biase submitted a brief, dated 1 April 1994 (the "Opp. Brief").

2. The Amended Complaint alleges Kaplan was, at all relevant times, "senior attorney" at the

OTS; Comizio was "Deputy Chief Counsel;" Schwartz was "senior attorney" for the OTS's regional office; Griffin was Assistant Director of the OTS's regional office; French was an "examiner" at the OTS's regional office; Kulka was "Regional Counsel" of the OTS. Amended Complaint, ¶¶ 4–9.

3. The Amended Complaint does not specify the parties or terms of the "Consent Agreement." It appears from the Amended Complaint as a whole, however, that the OTS was participating substantially in supervising the operations of PFC and PSL. *See* Amended Complaint, ¶¶ 13–17. Such an interpretation is supported by the role of the OTS, which has primary responsibility for the "examination, safe and sound operation, and regulation of savings associations." 12 U.S.C. § 1463(a)(1).

stock, he requested and received two seats on PFC's board of directors (the "Board"). *Id.*

Upon being appointed to the Board, Biase "recommended that [PFC's] management focus [its] attention upon drastically reducing operating expenses, including but no[t] limited to reducing excessive executive compensation." *Id.,* ¶ 12. Biase "also questioned OTS's own actions regarding PSL by suggesting that its hand picked directors and officers were incompetent and/or indifferent to [the] survival of [PSL]." *Id.,* ¶ 13. Biase alleges his actions alienated OTS, which "refused to address ... Biase's concerns about its actions regarding PSL." *Id.,* ¶¶ 14–15.

According to the Amended Complaint, Biase, "frustrated in his attempts to get the Board ... and OTS to take the necessary steps to save PSL," resigned from the Board on 28 January 1992. *Id.,* ¶ 16. Upon his resignation, Biase "announced that he would exercise his rights as a shareholder and appeal to his fellow shareholders." *Id.*

The Amended Complaint alleges that, on or about 29 February 1992, Biase "made a request for a special shareholders meeting [ (the "Shareholders Meeting") ] in a letter to the [s]ecretary of PFC." *Id.,* ¶ 17. Biase alleges the purpose of the Shareholders Meeting "was to discuss and vote on the following proposals:"

> (i) remove the [p]resident and [c]hief [e]xecutive [o]fficer of [PFC]; (ii) decrease the operating expense of [PFC]; (iii) limit compensation paid to the executives of [PFC];

> (iv) change the location of [PFC's] [h]eadquarters; (v) commence legal action on behalf of [PSL] against the United States and certain U[nited] S[tates] [G]overnment agencies for breach of contract

and restitution damages in an amount not less than $11,730[,]583.

*Id.*

The Amended Complaint alleges that, in response to his request for the Shareholders Meeting, OTS and the Individual Defendants "conspired to enter a campaign of retaliation and harassment against ... Biase with a view of depriving him of his rights as a shareholder of PFC as well as guarantees of freedom of association and expression, due process and equal protection of the laws." *Id.,* ¶ 18.

Biase alleges that, "subsequent to his request [for the Shareholders Meeting] Biase was ... the target of two separate investigations by OTS [ (the "OTS Investigations") ]." *Id.,* ¶ 19. Biase alleges the OTS Investigations were "groundless, retaliating in bad faith and were conducted with the sole purpose of preventing Biase [from] informing his fellow shareholders of misconduct on the part of officials of OTS and officers and directors of PFC and PSL." *Id.*

Biase alleges that, in connection with the OTS Investigations, the OTS issued "certain subpoenas" (the "OTS Subpoenas") "for the sole purpose of harassing ... Biase and not as part of any justifiable investigation."[4] *Id.,* ¶ 21. Biase alleges that, "[a]s a result of this campaign of harassment, ... [he] was unable to appeal to his fellow shareholders." *Id.,* ¶ 22. Biase further alleges that, as a "direct consequence" of the OTS Investigations, PSL "failed and was taken over by the Resolution Trust Corporation" ("RTC") on or about 20 November 1992. *Id.,* ¶ 23.

The first count of the Amended Complaint ("Count I") alleges the actions of OTS and the Individual Defendants deprived Biase of his rights to freedom of expression and association, in violation of the First Amendment. *Id.,* ¶ 25. The Amended Complaint seeks

---

4. Attached to the Amended Complaint as Exhibit A is a subpoena from the OTS to Biase, dated 5 February 1992 (the "5 February 1992 OTS Subpoena"). The 5 February 1992 OTS Subpoena directed Biase to produce, *inter alia,* each Federal income tax return filed by Biase with the Internal Revenue Service (the "IRS"), all documents relating to Biase's purchase of stock in PFC, all documents relating to the purchase or

sale of PFC stock by "any other person," all documents relating to the voting of PFC stock owned by Biase or "any other person," all documents relating to the disposition of the proceeds of "any sale(s) of PFC stock by [Biase] or by any other person" and all documents relating to Biase's resignation from the Board. 5 February 1992 OTS Subpoena, attached to Amended Complaint as Exhibit A, at 4–5.

$100,000,000.00 for the deprivation alleged in Count I. *Id., ad damnum* clause, ¶ 1.

The second count of the Amended Complaint ("Count II") alleges the actions of OTS and the Individual Defendants deprived Biase of his right to due process of law, in violation of the Fifth Amendment. Amended Complaint, ¶ 26. The Amended Complaint seeks $100,000,000.00 in damages for the deprivation alleged in Count II. *Id., ad damnum* clause, ¶ 2.

The third count of the Amended Complaint ("Count III") alleges the actions of OTS and the Individual Defendants deprived Biase of his right to equal protection of the law, in violation of the Fourteenth Amendment. Amended Complaint, ¶ 27. The Amended Complaint seeks $100,000,000.00 in damages for the deprivation alleged in Count III. *Id., ad damnum* clause, ¶ 3.

The fourth count of the Amended Complaint ("Count IV") alleges the actions of OTS and the Individual Defendants violated 42 U.S.C. § 1985. Amended Complaint, ¶ 29. The Amended Complaint seeks $100,000,-000.00 in damages for this violation. *Id., ad damnum* clause, ¶ 4.

The fifth count of the Amended Complaint ("Count V") alleges the actions of OTS and the Individual Defendants constituted "abuse of process." Amended Complaint, ¶ 30. Count V, like the other counts in the Amended Complaint, seeks $100,000,000.00 in damages.[5] *Id., ad damnum* clause, ¶ 5.

The OTS Motion was filed 7 March 1994. The Individual Defendants' Motion followed on 9 March 1994.

*Discussion*

A. *Standard of Review for Pro Se Submissions and Pleadings*

 *Pro se* submissions "must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957));

*see also* (*Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972)); *United States v. Day,* 969 F.2d 39, 42 (3rd. Cir.1992); *Lewis v. Attorney Gen. of United States,* 878 F.2d 714, 722 (3d Cir.1989). When reviewing a *pro se* complaint in this context, a court must assume a plaintiff's factual allegations are true and construe his claims liberally. *Neitzke v. Williams,* 490 U.S. 319, 330 n. 9, 109 S.Ct. 1827, 1834 n. 9, 104 L.Ed.2d 338 (1989); *Haines,* 404 U.S. at 520, 92 S.Ct. at 595–96; *Roman v. Jeffes,* 904 F.2d 192, 197 (3d Cir. 1990).

B. *The OTS Motion*

As indicated, OTS moves to dismiss the Amended Complaint for lack of jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

1. *Standard of Review under Fed. R.Civ.P. 12(b)(1)*

A challenge to the court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) differs from an attack on the merits pursuant to Fed.R.Civ.P. 12(b)(6) or 56. Rule 12(b)(1) does not afford a plaintiff all the procedural safeguards provided by Rules 12(b)(6) and 56. Instead, Rule 12(b)(1) challenges a plaintiff's right to be heard in Federal court. Limited procedural safeguards exist depending on the type of Rule 12(b)(1) motion.

 There are two types of Rule 12(b)(1) motions, those which "attack the complaint on its face" and those which "attack the existence of subject matter jurisdiction in fact, quite apart from any pleading." *Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Frankford Hosp. v. Davis,* 647 F.Supp. 1443, 1445 (E.D.Pa.1986). The facial attack offers a safeguard to the plaintiff similar to a 12(b)(6) motion; the allegations of the complaint are considered to be true for the pur-

---

5. The Amended Complaint further seeks interest on any judgement and "costs and disbursements of the action." Amended Complaint, *ad damnum* clause, ¶ 6.

poses of such a motion. *Mortensen,* 549 F.2d at 891.

For a Rule 12(b)(1) motion addressing the existence of subject matter jurisdiction, no presumptive truthfulness attaches to a plaintiff's allegations. *Id.* Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited; conflicting written and oral evidence may be considered and a court may "decide for itself the factual issues which determine jurisdiction." *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). This type of a Rule 12(b)(1) motion need not be converted into a Rule 56 motion when extra-pleading materials are considered. *Williamson,* 645 F.2d at 416; *Frankford Hosp.,* 647 F.Supp. at 1445; *see also* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1366 at 676.

Although motions pursuant to Rules 12(b)(1) and 12(b)(6) are distinct, often jurisdictional issues are intertwined with the merits of a case. "Where an attack on jurisdiction implicates the merits of a plaintiff's [F]ederal cause of action, the district court's role in judging the facts may be more limited...." *Williamson,* 645 F.2d at 413 n. 6. In other words, when the basis of jurisdiction is also an element in the plaintiff's [F]ederal cause of action, a conservative approach to a 12(b)(1) motion to dismiss is warranted. Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a [F]ederal cause of action, the proper course of action for the district court (assuming that the plaintiff's [F]ederal claim is not immaterial and made solely for the purpose of obtaining [F]ederal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case.

*Id.* at 415 (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). However, as further explained by *William-*

son, "a jurisdictional attack which does *not* implicate the merits of any [F]ederal cause of action is not bound by [this] ... standard." 645 F.2d at 415 n. 9 (emphasis in original).

A Federal court has broad power to decide whether it has jurisdiction to hear a case and may make factual findings which are decisive to the issue of jurisdiction. *Id.* at 413. The burden of demonstrating the existence of Federal jurisdiction is on the party seeking to invoke it. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Mortensen,* 549 F.2d at 891. In the instant case, the OTS Motion seeks dismissal of the Amended Complaint on the basis of OTS's asserted sovereign immunity. The OTS Motion neither attacks the Amended Complaint on its face nor addresses the merits of the Amended Complaint; it is an attack on subject matter jurisdiction *per se.*

### 2. *Sovereign Immunity*

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983); *see Federal Deposit Insurance Corporation v. Meyer,* — U.S. —, —, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994); *Loeffler v. Frank,* 486 U.S. 549, 554, 108 S.Ct. 1965, 1968–69, 100 L.Ed.2d 549 (1988). Moreover, "the terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941)), *reh'g denied,* 495 U.S. 941, 110 S.Ct. 2195, 109 L.Ed.2d 523 (1990); *see Meyer,* at —, 114 S.Ct. at 1000; *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). The conditional sovereign immunity of the United States extends to its branches and agencies, including the OTS.[6] *See Franchise Tax*

---

[6]. Biase suggests sovereign immunity is inapplicable to the OTS because "[b]efore being a bureau of the United States Treasury, [OTS] was operating as an independent not-for-profit insurer...." Opp. Brief at 10. Biase's assertion in this regard is unpersuasive.

278

*Board v. United States Postal Service,* 467 U.S. 512, 517–18, 104 S.Ct. 2549, 2552–53, 81 L.Ed.2d 446 (1984); *Security Savings Bank v. Director, Office of Thrift Supervision,* 798 F.Supp. 1067, 1073–74 (D.N.J.1992) (suit against OTS requires waiver of sovereign immunity); *Carteret Savings Bank v. Office of Thrift Supervision,* 762 F.Supp. 1159, 1167 (D.N.J.1991) (same).

■ The United States' consent to be sued must be express in order to constitute a waiver of sovereign immunity. *See Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Block v. North Dakota,* 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983); *United States v. New York Rayon Importing Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947). "There can be no consent by implication or by use of ambiguous language." *Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963 (quoting *New York Rayon Importing Co.,* 329 U.S. at 659, 67 S.Ct. at 604); *see United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980) (waiver of sovereign immunity may not be found in the absence of "unequivocally expressed" Congressional intent). "In analyzing whether Congress has waived the immunity of the United States [or its agency], [a court] must construe waivers strictly in favor of the sovereign, and not enlarge the waiver 'beyond what the language requires.'" *Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963 (quoting *Ruckleshaus v. Sierra Club,* 463

U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983)).

Congress has effected a narrow waiver of sovereign immunity with respect to suits against the OTS. Pursuant to 12 U.S.C. § 1464(d), which defines the regulatory authority of the OTS:

Except as otherwise provided, the Director [of the OTS] shall be subject to suit (*other than suits on claims for money damages*) by any Federal savings association or director or officer thereof with respect to any matter under this section or any other applicable law, or regulation thereunder, in the United States district court for the judicial district in which the savings association's home office is located, or in the United States District Court for the District of Columbia....

12 U.S.C. § 1464(d)(1)(A) (emphasis added).

■ As indicated by the language of the statute, the OTS's 'subject-to-suit clause' does not authorize suits against the OTS for money damages.[7] *Id.* The Amended Complaint seeks no relief other than money damages for the alleged actions of the OTS. *See* Amended Complaint, *ad damnum* clause, ¶¶ 1–5. The OTS' subject-to-suit clause, therefore, does not constitute a waiver of the OTS's sovereign immunity with respect to the claims in the Amended Complaint. *See* 12 U.S.C. § 1464(d)(1)(A). It must be determined, therefore, whether any of the provi-

Biase is correct in pointing out that OTS's predecessor agency, the Federal Home Loan Bank Board ("FHLBB") was an independent agency which supervised the deposit insurance function of the Federal Savings and Loan Insurance Corporation ("FSLIC"). *See* 12 U.S.C. § 1437. However, by the Financial Institutions Reform, Recovery and Reinforcement Act of 1989 ("FIRREA"), Pub.L. 101–73, 103 Stat. 183, Congress abolished the FHLBB and FSLIC, *see* 12 U.S.C. § 1437, note (Supp.1994), and established the OTS as "an office in the Department of the Treasury." 12 U.S.C. § 1462a. As an agency of the Federal Government, the sovereign immunity of the OTS has consistently been recognized. *See Security Savings Bank,* 798 F.Supp. at 1073–74; *Carteret Savings Bank,* 762 F.Supp. at 1167.

In any event, the legal status of the FHLBB has no bearing on the viability of the Amended Complaint in the instant case. The FHLBB was

abolished, and the OTS established, in 1989. *See* 12 U.S.C. §§ 1437, 1462a. The earliest events which are the subject of the Amended Complaint occurred "[d]uring the latter part of 1990." Amended Complaint, ¶ 11. By this time, Biase would have been dealing with the OTS and not the FHLBB. The Amended Complaint does not, in fact, name any regulatory entity other than the OTS.

7. Similarly, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, which provides for judicial review of the actions of Federal agencies, authorizes only claims "seeking relief other than money damages." 5 U.S.C. § 702. Accordingly, the APA does not waive the OTS's sovereign immunity from suits seeking money damages. *See Hubbard v. Administrator, Environmental Protection Agency,* 982 F.2d 531, 533 (D.C.Cir. 1992); *Creese v. Dole,* 776 F.Supp. 1474, 1478 (D.Colo.1991).

sions under which Biase seeks relief independently waives the OTS's sovereign immunity.

### a. Counts I–III: Constitutional Torts

As stated, Counts I, II and III of the Amended Complaint seek relief directly under the Constitution. *See* Amended Complaint, ¶¶ 25–27. Such claims are of the type authorized by the Supreme Court in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Supreme Court permitted constitutional tort actions against *individual Government officials,* in part on the rationale that such suits were the only remedy for the aggrieved. *See id.* at 410, 91 S.Ct. at 2012 (Harlan, J., concurring). In so reasoning, the Supreme Court reaffirmed that "[h]owever desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit." *Id.* Therefore, the Supreme Court recognized in *Bivens* that the doctrine of sovereign immunity bars a direct constitutional action against the Federal agency itself. *Id.*

The Supreme Court recently reaffirmed that a *Bivens*-type constitutional tort action may not lie directly against a Federal agency. In *Meyer,* the plaintiff filed a complaint against the FSLIC. *See* —— U.S. at ——, 114 S.Ct. at 999. The plaintiff's claim against the FSLIC alleged the agency had deprived him of a property right without due process of law, in violation of the Fifth Amendment. *Id.* at ——, 114 S.Ct. at 999. The plaintiff relied upon *Bivens* in making his claim against the FSLIC. *Id.* A jury found in favor of the plaintiff and the FSLIC appealed. After the Ninth Circuit affirmed the judgment of the district court, the FSLIC appealed to the Supreme Court. *Id.*

On grant of *certiorari,* the Supreme Court reversed. Analyzing whether a constitutional tort action can be brought against a Federal agency, the Court noted that *Bivens* authorized a constitutional action for damages only against a Federal *agent,* and that

the Court has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Id.* at ——, 114 S.Ct. at 1005. The Court further noted that the idea of expanding liability under *Bivens* to Federal agencies constituted "a significant extension of *Bivens.*" *Id.*

In light of these considerations, the Supreme Court declined to subject Federal agencies to suit under the *Bivens* theory. The Court reasoned, first, that it "implied a cause of action against [F]ederal officials in *Bivens* in part *because* a direct action against the Government was not available." *Id.* at ——, 114 S.Ct. at 1005 (emphasis in original). The Court, therefore, declined "to imply a damages action based on a decision that presumed the *absence* of that very action." *Id.* (emphasis in original).

The Court further reasoned:

> *Bivens* clearly contemplated that official immunity would be raised [by the individual agents subjected to suit.] ... It must be remembered that the purpose of *Bivens* is to deter *the officer.* If we were to imply a damages action directly against [F]ederal agencies, thereby permitting claimants to bypass qualified immunity, there would be no reason for aggrieved parties to bring damages actions against individual officers. Under [the plaintiff's] regime, the deterrent effects of the *Bivens* remedy would be lost.

*Id.* (citations omitted; emphasis in original). Finally, the Court stated that recognizing a direct action against Federal agencies under the *Bivens* theory "would be creating a potentially enormous financial burden for the Federal Government." *Id.* at ——, 114 S.Ct. at 1006.

■ The decisions in *Bivens* and *Meyer* make clear that a constitutional tort action for damages cannot lie directly against a Federal agency. Accordingly, the authorization of such an action in *Bivens* does not operate to waive the immunity of a Federal agency from suit.[8] *See Bivens,* 403 U.S. at

---

8. In *Meyer,* the Supreme Court held that the FSLIC's 'subject-to-suit clause,' 12 U.S.C. § 1725(c)(4), constituted a full waiver of the

FSLIC's sovereign immunity. *See* —— U.S. at ——, 114 S.Ct. at 1004. In so holding, the Supreme Court relied on the broad and unquali-

410, 91 S.Ct. at 2012; *see also Chapoose v. Hodel,* 831 F.2d 931, 935 (10th Cir.1987) (A *Bivens* action against a Federal agency "is a suit against the sovereign which is protected by sovereign immunity."); *United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir. 1982) ("Defendants' [counter]claims based directly on Fifth Amendment violations are ... barred by the doctrine of sovereign immunity."); *Jaffee v. United States,* 592 F.2d 712, 717 (3d Cir.1979) ("Because [plaintiff] has sued the Government itself, *Bivens* ... do[es] not afford him a traversable bridge across the moat of sovereign immunity.").

■ Biase has cited no authority to suggest, and it does not appear, that Congress has waived OTS's sovereign immunity with respect to claims of the type set forth in Counts I, II and III. OTS is, therefore, insulated from liability on Counts I, II and III by the doctrine of sovereign immunity. Accordingly, these counts, to the extent they are asserted against OTS, must be dismissed for lack of subject matter jurisdiction.

### b. *Count IV: 42 U.S.C. § 1985*

■ As stated, Count IV of the Amended Complaint seeks relief under 42 U.S.C. § 1985. Section 1985, a provision of the Civil Rights Act of 1871 (the "Civil Rights Act"), 42 U.S.C. §§ 1981 *et seq.,* prohibits several forms of conspiratorial activity in interference with a person's civil rights. *See generally* 42 U.S.C. § 1985. Section 1985 contains no waiver, explicit or otherwise, of Federal sovereign immunity. *See id.* As indicated, a waiver of Federal sovereign immunity must be express and may not be implied. *See Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963.

It has, in fact, been consistently held that neither section 1985 nor any other provision of the Civil Rights Act may provide the basis for an action against the United States or a Federal agency. *See Hohri v. United States,* 782 F.2d 227, 245 (D.C.Cir.1986) (The provisions of 42 U.S.C. §§ 1981, 1983, 1985 and 1986, "by their terms, do not apply to actions against the United States."), *vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987); *Timmons,* 672 F.2d at 1380 ("It is well-established ... that the United States has not waived its immunity to suit under the provisions of the [Civil Rights Act]."); *Unimex, Inc. v. Department of Housing and Urban Development,* 594 F.2d 1060, 1061 (5th Cir.1979) ("The direct claims against [the agency] are barred by sovereign immunity because the United States has not consented to suit under the [Civil Rights Act]."); *Proffitt v. United States,* 758 F.Supp. 342, 345 (E.D.Va.1990) ("The United States has not consented to suit under the Civil Rights [Act].... Moreover, the United States is not a [suable] person within the meaning of section 1985."); *Baird v. Haith,* 724 F.Supp. 367, 382 (D.Md.1988) ("[P]laintiff has also not pointed to, nor can the court find, any authority for the proposition that the sovereign has consented to be sued under any of the civil rights statutes, 42 U.S.C. §§ 1981 *et seq.").*

■ As these authorities make clear, the OTS, as a Federal Agency, is not subject to suit under section 1985 or any of the other provisions of the Civil Rights Act. *See Timmons,* 672 F.2d at 1380. As stated, Count IV of the Complaint seeks relief only under

---

fied language of the FSLIC's subject-to-suit clause, which states: "[The FSLIC] shall have the power ... [t]o sue and be sued, complain and defend, in any court of competent jurisdiction in the United States." 12 U.S.C. § 1725(c)(4); *see Meyer,* at ——, 114 S.Ct. at 1003. Nonetheless, as stated, the Court concluded that an action under *Bivens* cannot lie against a Federal agency. *Id.* at ——-——, 114 S.Ct. at 1005–06.

The holding in *Meyer* in no way compels the conclusion that Congress has waived OTS' sovereign immunity against constitutional tort actions. Unlike the subject-to-suit clause at issue in *Meyer,* the OTS' subject-to-suit clause contains a clear and unequivocal limitation on the waiver of sov-

ereign immunity contained therein. Specifically, as indicated, the OTS's subject-to-suit clause expressly withholds consent from suits seeking money damages. 12 U.S.C. § 1464(d)(1)(A). The holding in *Meyer* does not, therefore, provide a basis for concluding that Congress waived OTS's sovereign immunity with respect to constitutional tort actions.

Rather, the holding in *Meyer* makes clear that the cause of action authorized in *Bivens* cannot constitute an implied waiver of the sovereign immunity of a Federal agency. Because a cause of action under *Bivens* may not lie against a Federal agency, it is apparent that such an action may not circumvent the bar of Federal sovereign immunity.

section 1985. *See* Amended Complaint, ¶ 29. Because Count IV is barred as against OTS by the doctrine of sovereign immunity, that count must be dismissed to the extent it seeks recovery from OTS.

### c. *Count V: Abuse of Process*

 Count V of the Amended Complaint, as indicated, seeks recovery for OTS's alleged "abuse of process." Amended Complaint, ¶ 30. Abuse of process is a tort actionable under state common law. *See Simone v. Golden Nugget Hotel and Casino,* 844 F.2d 1031, 1036 (3d Cir.1988); *SBK Catalogue Partnership v. Orion Pictures Corp.,* 723 F.Supp. 1053, 1057 (D.N.J.1989).

 By the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.,* Congress has effected a limited waiver of Federal sovereign immunity against tort actions. *See Livera v. First National State Bank of New Jersey,* 879 F.2d 1186, 1194 (3d Cir.) (FTCA "constitutes a waiver of sovereign immunity...."), *cert. denied sub nom Livera v. United States Small Business Administration,* 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 322 (1989). "The [FTCA] is the exclusive waiver of sovereign immunity for actions sounding in tort against the United States, its agencies and officers acting within their official capacity." *Wilson v. Rackmill,* 1990 WL 63504 at *7 (E.D.Pa.1990); *see Meyer,* —— U.S. at ——, 114 S.Ct. at 1000–01. As a waiver of sovereign immunity, the FTCA's limitations and procedural requirements must be strictly applied. *See Livera,* 879 F.2d at 1194.

Pursuant to 28 U.S.C. § 2680(h), the FTCA's waiver of sovereign immunity "shall not apply to:"

Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, *abuse of process,* libel, slander, misrepresentation, deceit or interference with contractual rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the [FTCA] shall apply to any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

28 U.S.C. § 2680(h) (emphasis added).

As indicated by the language of section 2680(h), the United States has retained its sovereign immunity against suits for abuse of process, unless such abuse of process is alleged to have been committed by "investigative or law enforcement officers...." *Id.; see Melo v. Hafer,* 912 F.2d 628, 640, 642 n. 20 (3d Cir.1990), *aff'd,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *General Public Utilities Corp. v. United States,* 745 F.2d 239, 242 (3d Cir.1984), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985); *Balmaceda v. United States,* 815 F.Supp. 823, 825 (E.D.Pa.1992); *Wilson,* 1990 WL 63504 at *7–8; *see also Sheridan v. United States,* 487 U.S. 392, 398, 108 S.Ct. 2449, 2454, 101 L.Ed.2d 352 (1988) (Federal courts lack jurisdiction over types of actions excepted by section 2680(h)). Accordingly, Biase's abuse of process claim against OTS is barred by OTS's sovereign immunity unless the actions alleged in the Amended Complaint were committed by "investigative or law enforcement officers." 28 U.S.C. § 2680(h); *see Wilson v. United States,* 959 F.2d 12, 15 (2d Cir.1992).

 "For the purpose of [section 2680(h)], 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Applying this standard to the employees of OTS named in the Amended Complaint, it does not appear such employees are investigative or law enforcement officers within the meaning of section 2680(h).

Biase has not cited, and there does not appear to exist, any legal authority vested in the OTS to "execute searches, to seize evidence, or to make arrests for violations of Federal law." [9] *Id.* The Individual Defen-

---

9. It is recognized that the OTS is empowered to examine bank documents and issue subpoenas therefor. *See* 12 U.S.C. § 1464(d)(1)(B)(ii-v).

However, the OTS must make application to a district court to compel access to documents. *See* 12 U.S.C. § 1464(d)(1)(B)(iv). Indeed, it has

dants, the only OTS employees named in the Amended Complaint, are, as indicated, attorneys, administrators and bank examiners; none are "law enforcement officers" as that term is defined in section 2680(h). *See* Amended Complaint, ¶¶ 4–9. Such persons have, in fact, been held not to constitute "law enforcement officers" under section 2680(h). *Saratoga Savings & Loan Association,* 724 F.Supp. at 689 (FSLIC examiners were not "law enforcement officers" within meaning of section 2680(h)); *Dirienzo v. United States,* 690 F.Supp. 1149, 1158 & n. 8 (D.Conn.1988) (Federal attorneys are not "law enforcement officers" within meaning of section 2680(h)); *see also Bush v. Federal Deposit Insurance Corp.,* 999 F.2d 547, No. 93–1075, 1993 WL 262591 at *2 (10th Cir. 8 July 1993) (Federal Deposit Insurance Corporation ("FDIC") is

immune against actions excepted in section 2680(h)); *Federal Deposit Insurance Corp. v. diStefano,* 839 F.Supp. 110, 121 (D.R.I.1993) (same); *Taylor v. Federal Home Loan Bank Board,* 661 F.Supp. 1341, 1348 (N.D.Tex. 1986) (FSLIC is immune from suits excepted in section 2680(h)).

Count V, as stated, seeks recovery for a tort excepted by section 2680(h). Amended Complaint, ¶ 30. Because the actions alleged in support of this claim were not committed by "investigative or law enforcement officers," the FTCA does not waive the OTS's sovereign immunity against such a claim. *See* 28 U.S.C. § 2680(h). Count V, therefore, is barred as against OTS by the doctrine of sovereign immunity and must be dismissed as against OTS for lack of subject matter jurisdiction.[10]

been held that the subpoena power and authority to examine bank documents vested in bank examiners does not make such examiners law enforcement officers for the purpose of section 2680(h). *See Saratoga Savings & Loan Association v. Federal Home Loan Bank of San Francisco,* 724 F.Supp. 683, 689 (N.D.Cal.1989) (FSLIC examiners not "law enforcement officers" under section 2680(h) despite FSLIC's access to documents "as the FSLIC may require"); *cf. Metz v. United States,* 788 F.2d 1528, 1532 (11th Cir.) (Section 2680(h) "cannot be expanded to include governmental actors who procure law enforcement actions, but who are themselves not law enforcement officers."), *cert. denied,* 479 U.S. 930, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986). The subpoena and examination power of the OTS does not, therefore, render its agents "law enforcement officers" within the meaning of section 2680(h).

In addition, Biase does not allege the OTS compelled compliance with the OTS Subpoena or otherwise "seized" documents from Biase. The Third Circuit has made clear that, even when an officer is empowered to execute searches, seizures or arrests, section 2680(h) insulates the Federal Government from liability where "the complaint[] do[es] not charge that [the officer] committed an intentional tort *while executing a search, seizing evidence or making an arrest.*" *Pooler v. United States,* 787 F.2d 868, 872 (3d Cir.) (emphasis added), *cert. denied,* 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986). The Amended Complaint, therefore, does "not state claims falling within the [law enforcement officer] proviso to section 2680(h) because no [F]ederal officer is charged with a tort in the course of a search, seizure or an arrest." *Id.*

10. Even if the Individual Defendants were deemed to be "law enforcement officers" for the purposes of section 2680(h), OTS would be insulated from liability for their torts under the dis-

cretionary function doctrine. Pursuant to 28 U.S.C. § 2680(a), the FTCA's waiver of sovereign immunity is expressly withheld in relation to "[a]ny claim based ... upon the exercise or performance or the failure to exercise or perform a *discretionary function or duty* on the part of a [F]ederal agency or an employee of the Government, *whether or not the discretion involved be abused.*" 28 U.S.C. § 2680(a) (emphasis added). The discretionary function exclusion immunizes Federal agencies from liability even for acts of persons deemed to be investigative or law enforcement officers under section 2680(h). *See Gray v. Bell,* 712 F.2d 490, 507–08 (D.C.Cir. 1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *Pooler v. United States,* 609 F.Supp. 198, 204 (E.D.Pa.1985), *aff'd,* 787 F.2d 868 (3d Cir.), *cert. denied,* 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986).

The Supreme Court has defined discretionary functions as those which permit the official to exercise "judgment or choice." *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (holding that FHLBB's regulation of day-to-day functions of bank fell within discretionary function exception to FTCA); *see Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988). Stated differently, a discretionary function is one "within the scope of authority of an agency or an official, as delegated by statute, regulation or jurisdictional grant." *Birnbaum v. United States,* 588 F.2d 319, 329 (2d Cir.1978); *see Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273.

In the instant case, the sole action of the OTS which could constitute the basis of Count V is the issuance of the OTS Subpoenas. *See* Amended Complaint, ¶ 21. As indicated, the OTS is specifically empowered by statute to "issue subpoenas, and, for the enforcement thereof, apply to [the appropriate district court.]" 12 U.S.C.

■ Even if Count V were not barred by section 2680(h), it would nonetheless be barred by Biase's failure to allege he has exhausted his administrative remedies. Pursuant to 28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

■ Fulfillment of the administrative exhaustion requirement is essential to a court's subject matter jurisdiction over a claim under the FTCA. *See Livera*, 879 F.2d at 1194 (Exhaustion "is a jurisdictional requirement not subject to waiver by the [G]overnment."); *Tucker v. United States Postal Service*, 676 F.2d 954, 959 (3d Cir.1982) ("Noncompliance with section 2675 deprives a claimant of [F]ederal court jurisdiction over his or her claim."); *Federal Deposit Insurance Corp. v.*

*James T. Barnes of Puerto Rico, Inc*, 834 F.Supp. 543, 549 (D.P.R.1993) (claims against FDIC barred by failure to present claim to FDIC prior to suit); *North Arkansas Medical Center v. Barrett*, 1990 WL 364778 at *15 (W.D.Ark.1990) (claim against OTS barred by failure to present claim to OTS before suit), *aff'd*, 962 F.2d 780 (8th Cir.1992).

■ A complaint's failure to allege exhaustion of administrative remedies, therefore, requires dismissal of the complaint for lack of subject matter jurisdiction. *See Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir.1980) (dismissing *pro se* complaint for failure to allege exhaustion of administrative remedies); *Prybyszewski v. City of Philadelphia*, 1990 WL 2800 at *3 (E.D.Pa.1990) (same).

■ In the instant case, the Amended Complaint fails to allege Biase presented a claim, regarding the OTS Subpoenas or otherwise, to OTS or to any other Federal agency. Moreover, the Amended Complaint fails to allege OTS or any other Federal agency denied such a claim submitted by Biase. Because Biase has failed to allege he exhausted his administrative remedies prior to filing the instant action, Count V must be dismissed as against OTS for lack of subject matter jurisdiction.[11] *See Livera*, 879 F.2d at 1194.

§ 1464(d)(1)(B)(v)(II). No restrictions are imposed on OTS's issuance and enforcement of subpoenas; OTS officials have discretion to use, or refrain from using, their statutory authority in this regard. Under the standards articulated by the Supreme Court, OTS's issuance of subpoenas is a discretionary function, in relation to which it is insulated from liability pursuant to section 2680(a). *See Pooler*, 787 F.2d at 871 ("[D]ecision making as to investigation and enforcement ... are discretionary functions."). For this reason alone, OTS would be immunized from liability on Count V by the doctrine of sovereign immunity.

11. Generally, "the pleader should be given an opportunity to file an amended complaint to cure such pleading defects [as failure to exhaust administrative remedies]." *Gillespie*, 629 F.2d at 641. However, because the Amended Complaint must be dismissed under both section 2680(a) and section 2680(h), allowing Biase to amend his claims to conform to the requirements of section 2675(a), even if factually appropriate, would be futile. The Individual Defendants have, in fact, certified that a review of OTS's "FTCA files" revealed "[n]o record of any administrative claims under the FTCA ... pertaining to ... Biase for the time period of January 1, 1990 to

present." Guest Decl., ¶ 5. The Amended Complaint's failure to allege administrative exhaustion does not, therefore, appear to have been a simple error in pleading.

Because the OTS is insulated from liability on Count V by the doctrine of sovereign immunity, it is unnecessary to reach OTS's contention that the United States is the only proper defendant in a suit under the FTCA, and that OTS cannot be sued *eo nomine*. *See* OTS Brief at 9; *cf. Federal Deposit Insurance Corp. v. Miller*, 781 F.Supp. 1280, 1287 (N.D.Ill.1991) (dismissing complaint naming OTS because "actions brought against federal agencies must name the United States as a party"). In any event, in light of the less exacting standard applied to *pro se* pleadings, Biase's error in pleading *might* not be fatal to the Complaint. *See Haines*, 404 U.S. at 520, 92 S.Ct. at 595–96.

Biase alleges jurisdiction over Count V pursuant to the "[p]endent jurisdictional powers of the [c]ourts of the United States." Amended Complaint, ¶ 1. It is assumed Biase seeks to rely on 28 U.S.C. § 1367, which defines the supplemental jurisdiction of the Federal courts. Section 1367(c), however, provides that a district court

The OTS is immunized from liability on each of the counts of the Amended Complaint pursuant to the doctrine of sovereign immunity. This court, therefore, lacks jurisdiction over the Amended Complaint to the extent it seeks recovery against the OTS. *See Dalm*, 494 U.S. at 608, 110 S.Ct. at 1368. Accordingly, the Amended Complaint is dismissed as against OTS pursuant to Rule 12(b)(1).[12]

### C. *The Individual Defendants' Motion*

As indicated, the Individual Defendants move for dismissal of the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(5) and 12(b)(6).

#### 1. *Counts I–IV: Rule 12(b)(6)*

■■■ Because granting a motion under Federal Rule of Civil Procedure 12(b)(6) can result in a dismissal at an early stage of the plaintiff's case, all allegations of the plaintiff must be taken as true and all reasonable factual inferences drawn in her favor. *Gomez v. Toledo*, 446 U.S. 635, 636, 100 S.Ct. 1920, 1921–22, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991); *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1395 (3d Cir. 1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990); *Melikian v. Corradetti*, 791 F.2d 274, 277 (3d Cir.1986). Nevertheless, legal conclusions made in the guise of factual allegations are given no presumption of truthfulness. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944–45, 92 L.Ed.2d 209 (1986); *Haase v. Webster*, 807 F.2d 208, 215 (D.C.Cir.1986); *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Western Mining*

*Council v. Watt*, 643 F.2d 618, 626 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

■■■ A court may dismiss a complaint for failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Unger*, 928 F.2d at 1395; *Markowitz*, 906 F.2d at 103; *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988). However, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102; *accord Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Unger*, 928 F.2d at 1395; *Angelastro v. Prudential–Bache Secur., Inc.*, 764 F.2d 939, 944 (3d Cir.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

■■■ A Federal court reviewing the sufficiency of the complaint has a limited role. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Estate of Bailey v. County of York*, 768 F.2d 503, 506 (3d Cir.1985). "When making a determination under Rule 12(b)(6), the court cannot consider matters outside the pleadings."[13] *Wiley v. Hughes*

---

12. Because the Amended Complaint is dismissed for lack of subject matter jurisdiction, it is not necessary to reach OTS's argument that the Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. *See Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir.1990) ("[A] [F]ederal court is bound to consider its own jurisdiction preliminary to consideration of the merits.").

13. When a party asks the court to consider matters outside the pleadings in connection with a motion under Rule 12(b)(6), the court may either exclude the additional material or decide the

---

"may decline to exercise supplemental jurisdiction over a ... [pendent] claim if ... the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c)(3); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Pfeiffer v. School Board for Marion Ctr. Area*, 917 F.2d 779, 789 (3d Cir. 1990). In the instant case, all of the counts over which the court was alleged to have original jurisdiction, Counts I through IV, have been dismissed for lack of jurisdiction. Accordingly, to the extent jurisdiction over Count V could be predicated on the court's supplemental jurisdiction, Count V would be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

*Capital Corp.,* 746 F.Supp. 1264, 1275 (D.N.J. 1990); *see Allison v. General Motors Corp.,* 604 F.Supp. 1106, 1119 (D.Del.), *aff'd,* 782 F.2d 1026 (3d Cir.1985).

### a. *Qualified Immunity and Biase' Bivens Claims*

As indicated, Counts I through III seek recovery against the Individual Defendants directly under the Constitution.[14] As with respect to all claims against Federal officials in their individual capacities, Biase's constitutional claims raise the issue of the qualified immunity of the Individual Defendants.

The Supreme Court has recognized that "permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Courts have accommodated this concern "by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.; see Mal-*

*ley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

"One of the purposes of [qualified] immunity ... is to spare a defendant not only of unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Consonant with this purpose qualified immunity "is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *see Siegert,* 500 U.S. at 233, 111 S.Ct. at 1794. Accordingly, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793; *see also Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

Qualified immunity affords "protection to all but the plainly incompetent or

motion as one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b); *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Rose v. Bartle,* 871 F.2d 331, 340 (3d Cir.1989). However, before converting a motion to dismiss to one for summary judgment, the court must provide the parties with notice and an "adequate opportunity to respond." *Berardi v. Swanson Memorial Lodge No. 48 of Fraternal Order of Police,* 920 F.2d 198, 200 (3d Cir.1990); *see Rose,* 871 F.2d at 340; *Castle v. Cohen,* 840 F.2d 173, 179–80 (3d Cir. 1988).

14. It does not appear that Counts I through III seek recovery against the Individual Defendants in their official capacities. To the extent they do, these counts are barred by the doctrine of sovereign immunity. A suit against Federal officers in their official capacities is a suit against the United States. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Del Raine v. Carlson,* 826 F.2d 698, 703 (7th Cir.1987). As stated, a *Bivens* claim against the United States is barred by the United States' sovereign immunity. *See Chapoose,* 831 F.2d at 935; *Jaffee,* 592 F.2d at 717. Accordingly, any *Bivens* claims asserted against the Individual De-

fendants in their official capacities are barred by the doctrine of sovereign immunity and would be dismissed pursuant to Fed.R.Civ.P. 12(b)(1). *See Williamson v. United States,* 815 F.2d 368, 380 (5th Cir.1987) (The "United States and its officers in pursuit of their official duties remain protected [from *Bivens* claims] by sovereign immunity."); *Holloman v. Watt,* 708 F.2d 1399, 1402 (9th Cir.1983) (A *Bivens* suit "is against the employee in his [personal] rather than official capacity, and is therefore not a suit against the sovereign...."), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984); *Kaufmann v. United States,* 840 F.Supp. 641, 648 (E.D.Wis. 1993) (interpreting *Bivens* claim as asserted against officials only in their individual capacity because claims against officials in their official capacity would be barred by sovereign immunity); *see also Coleman v. Espy,* 986 F.2d 1184, 1189 (8th Cir.) (Federal employees sued in their official capacities are protected from suit by sovereign immunity), *cert. denied,* —— U.S. ——, 114 S.Ct. 301, 126 L.Ed.2d 249 (1993); *Atkinson v. O'Neill,* 867 F.2d 589, 590 (10th Cir.1989) (same).

those who knowingly violate the law." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096; *see Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816–17. In order to defeat an assertion of qualified immunity, a plaintiff must allege that the defendant official violated a "clearly established" right held by the plaintiff. *Anderson,* 483 U.S. at 635, 107 S.Ct. at 3036–37; *see Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. A plaintiff does not fulfill this requirement simply by alleging the defendant violated some constitutional provision, and hence violated a clearly established right.

> For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation.

*Anderson,* 483 U.S. at 639, 107 S.Ct. at 3039. The Supreme Court has recognized that such an approach to official immunity would eviscerate the immunity. *Id.*

■■■■ The Court has, therefore, established "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:"

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citing *Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1097–98; *Mitchell,* 472 U.S. at 535, 105 S.Ct. at 2820); *see Siegert,* 500 U.S. at 231, 111 S.Ct. at 1793. In addition, "plaintiffs must, at the very least, specify the 'clearly established' rights they allege to have been violated with sufficient precision to put defendants on notice of the nature of the claim and enable them to prepare a response [based on] qualified immunity. . . ." *Dunbar Corp. v. Lindsey,* 905

F.2d 754, 763 (4th Cir.1990); *see Martin v. Malhoyt,* 830 F.2d 237, 257 (D.C.Cir.1987).

■■■■ In cases where "subjective intent is an element of a constitutional tort action," the complaint must fulfill "a heightened pleading standard" to survive an assertion of qualified immunity. *Mendocino Environmental Center v. Mendocino County,* 14 F.3d 457, 462 (9th Cir.1994); *see Dunbar Corp.,* 905 F.2d at 764; *Siegert v. Gilley,* 895 F.2d 797, 804 (D.C.Cir.1990), *aff'd,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Shannon v. General Electric Co.,* 812 F.Supp. 308, 322 (N.D.N.Y.1993).

As one court has explained:

> [B]ecause conclusory allegations of unconstitutional or otherwise illegal conduct will not withstand a public official's dispositive pretrial motion [based on qualified immunity], and because plaintiffs cannot expect the court's assistance in obtaining the necessary factual support, plaintiffs bringing suit against public officials generally must put forward, in their complaints or other supporting materials, greater factual specificity and 'particularity' than is usually required.

*Martin,* 830 F.2d at 257; *see Herbage v. Meese,* 747 F.Supp. 60, 64 (D.D.C.1990); *see also Siegert,* 500 U.S. at 235, 111 S.Ct. at 1795 (Kennedy, J., concurring) ("[T]he heightened pleading standard is a necessary and appropriate accommodation between the state of mind component of malice and objective test that prevails in qualified immunity analysis as a general matter."). "Failure to meet the heightened pleading standard means that the [officials sued] are entitled to qualified immunity." *Tachiquin v. Stowell,* 789 F.Supp. 1512, 1516 (E.D.Cal.1992).

■■ Accordingly,

> in order to survive a motion to dismiss, plaintiffs must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent. The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity.

*Branch v. Tunnell,* 14 F.3d 449, 452 (9th Cir.1994); *see Siegert,* 500 U.S. at 235–36, 111 S.Ct. at 1795 (Kennedy, J., concurring); *Siegert,* 895 F.2d at 803; *Rallis v. Stone,* 821 F.Supp. 466, 470 (E.D.Mich.1993) (applying standard to *pro se* complaint).

■ Where several officials are alleged to have violated a plaintiff's rights, the plaintiff "must plead the personal involvement of each defendant with specificity and with sufficient facts to overcome a likely defense of immunity." *Rallis,* 821 F.Supp. at 466; *see Awalt v. Whalen,* 809 F.Supp. 414, 416 (E.D.Va.1992) (In order to withstand heightened pleading requirement, plaintiff must allege "who did what to whom and why."); *Herbage,* 747 F.Supp. at 64 (dismissing complaint against Federal officials because "plaintiff advance[d] the wholly conclusory proposition that [F]ederal defendants violated his constitutional rights, while failing to describe what role each of the [F]ederal defendants had in the alleged conspiracy"); *Behre v. Thomas,* 665 F.Supp. 89, 94 (D.N.H.1987) ("[T]he plaintiff must show some causal connection between an act of the official and the alleged violation."), *aff'd,* 843 F.2d 1385 (1st Cir.1988).

■ The heightened pleading requirement takes on added importance where an unconstitutional conspiracy is alleged among Federal officials.

[B]are conclusory allegations of "conspiracy" or "concerted action" will not suffice. The plaintiffs must expressly allege an agreement or make averments of "communication, consultation, cooperation, or command" from which such an agreement can be inferred. Allegations that the defendants' actions combined to injure the plaintiffs are not a sufficient basis from which to imply a conspiracy. Additionally, the plaintiffs must make "specific factual allegations connecting the defendant to the injury."

A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of the underlying material facts.[15]

*Flanagan v. Shively,* 783 F.Supp. 922, 928–29 (M.D.Pa.), *aff'd,* 980 F.2d 722 (3d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *see Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981) ("[T]his court has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general alle-

---

**15.** In *Leatherman v. Tarrant City Narcotics Intelligence and Coordination Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court held that the heightened pleading standard previously applicable to actions under 42 U.S.C. § 1983 was unconstitutional. *Id.* at ——, 113 S.Ct. at 1163. Nowhere in the *Leatherman* opinion, however, did the Supreme Court disturb the heightened pleading standard required to survive a defense of qualified immunity in a *Bivens* action.

In fact, there is good reason to find that the holding in *Leatherman* is inapposite to *Bivens* actions. In *Leatherman,* the Court relied heavily on the fact that the defendant, a municipality, was not entitled to qualified immunity:

[Defendant] wrongly equates freedom from liability with immunity from suit. To be sure, we [have] reaffirmed ... that "a municipality cannot be held liable under section 1983 on a respondeat superior theory." But, contrary to [defendant's] assertions, this protection against liability does not encompass immunity from suit.... [We have] rejected a claim that municipalities should be afforded qualified immunity, much like that afforded individual officials.... *We thus have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading [standard]*

*in cases involving individual government officials.*

*Id.* (emphasis added).

As indicated, qualified immunity, unlike the defense available to the municipal defendant in *Leatherman,* "is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in original). Therefore, the considerations which underlie the heightened pleading standard in *Bivens* cases did not underlie the heightened standard invalidated by the Court in *Leatherman. Cf. Smith v. Nixon,* 807 F.2d 197, 200 (D.C.Cir.1986) ("Bare allegations of improper purpose ... do not suffice to drag officials into the mire of discovery."). For this reason, the Court in *Leatherman* expressly refused to address whether the qualified immunity of individual officials would require a heightened pleading standard in *Bivens* actions. The Court's decision in *Leatherman,* therefore, did not disturb the heightened pleading standard applicable to *Bivens* actions. *See Mendocino Environmental Center,* 14 F.3d at 462 (applying heightened pleading standard to *Bivens* action well after publication of decision in *Leatherman* ); *Branch,* 14 F.3d at 452 (same); *Rallis,* 821 F.Supp. at 470 (same).

gations' of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Rallis*, 821 F.Supp. at 470; *Herbage*, 747 F.Supp. at 64.

 Applying these principles to the case at bar, it is clear the Amended Complaint fails to allege the Individual Defendants' actions and motives with sufficient specificity to overcome the Individual Defendants' assertion of qualified immunity. The gravamen of the Amended Complaint is that the Individual Defendants conspired to launch the OTS Investigations and issue the OTS Subpoenas for the purpose of retaliating against Biase. *See* Amended Complaint, ¶¶ 17–22 (alleging that Individual Defendants "conspired to enter a campaign of retaliation and harassment against [Biase]" through OTS Investigations and OTS Subpoenas).

Biase does not contest the authority of the OTS or the Individual Defendants to carry out investigations and issue subpoenas. *See* Opp. Brief at 2 ("I do not deny or even question the authority of OTS under the applicable statutes to conduct legitimate investigations of thrift institutions. . . ."). Nor could he validly do so. *See* 12 U.S.C. § 1464(d) (vesting director of OTS with authority to conduct "examinations of the affairs" of thrift institutions and "issue subp[o]enas" in connection with such examinations). Biase challenges the propriety of the *motives* of the Individual Defendants in carrying out the OTS Investigations and issuing the OTS Subpoenas. *See* Amended Complaint, ¶¶ 17–22; Opp. Brief at 5–8 (asserting "bad faith" of Individual Defendants). Viewing the Amended Complaint as a whole, the Individual Defendants' unconstitutional motive is at least an element, and likely the dispositive element, of Biase's *Bivens* claims. Under these circumstances, the *Bivens* counts of the Amended Complaint must fulfill the aforementioned heightened pleading standard in order to survive the Individual

Defendants' Motion. *See Mendocino Environmental Center*, 14 F.3d at 462.

The Amended Complaint clearly fails to fulfill this standard. The only specific references to the Individual Defendants are in the paragraphs identifying the parties. There, Biase simply alleges that each of the Individual Defendants "did engage in a conspiracy with the [other Individual Defendants] in order to deprive [Biase] of constitutional and civil rights." Amended Complaint, ¶¶ 4–9. Nowhere in the Amended Complaint does Biase allege the acts each of the Individual Defendants performed in carrying out the alleged conspiracy or the basis for Biase's assertions of unconstitutional motive. As indicated, conclusory allegations of conspiracy and unconstitutional intent, such as those contained in the Amended Complaint, will not survive a motion to dismiss. *See Branch*, 14 F.3d at 452; *Flanagan*, 783 F.Supp. at 928–29; *see also Nuclear Transport & Storage, Inc. v. United States*, 703 F.Supp. 660, 667 (E.D.Tenn.1988) (dismissing *Bivens* claim under heightened pleading standard where complaint merely alleged defendants acted to "implement, approve, carry out and otherwise facilitate" unconstitutional activity), *aff'd*, 890 F.2d 1348 (6th Cir.1989), *cert. denied*, 494 U.S. 1079, 110 S.Ct. 1807, 108 L.Ed.2d 938 (1990).

Even if the actions and intent of the Individual Defendants were pleaded with greater specificity, Counts I through III would be dismissed for failure to adequately allege a violation of a clearly established right. Counts I through III merely state, in conclusory fashion, that the conduct of the Individual Defendants and the OTS violated the First Amendment, the Due Process Clause and the Equal Protection Clause. *See* Amended Complaint, ¶¶ 25–27. The Amended Complaint does not identify the manner in which the conduct of the Individual Defendants or the OTS violated any such rights.[16]

---

16. As indicated, Biase alleges he was denied his rights under the First Amendment, the Due Process Clause and the Equal Protection Clause. *See* Amended Complaint, ¶¶ 25–27. There is no discernible nexus between the conduct of the Individual Defendants as alleged in the Amended Complaint and the prohibitions of the Equal Protection Clause.

Biase alleges his First Amendment rights to free speech and peaceable assembly were violated by the conduct of the Individual Defendants. *Id.*, ¶ 25. Biase does not identify which acts of speech or assembly on his part were impermissibly restrained. The only acts of speech or assembly referenced in the Amended Complaint are Biase's attempts to call the Shareholder's Meet-

Such conclusory assertions that the Individual Defendants violated broad constitutional provisions are insufficient to overcome an assertion of qualified immunity. *See Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038–39; *Dunbar Corp.*, 905 F.2d at 763. Biase has, moreover, done nothing in his opposition papers to argue or clarify the contours of the constitutional rights he claims to have been violated. In the absence of more specific allegations with respect to the rights Biase alleges were transgressed, the Amended Complaint must be dismissed. *See Dunbar Corp.*, 905 F.2d at 763.

■ The Amended Complaint fails to allege, with sufficient specificity, the actions of the Individual Defendants which constitute

the basis of Counts I through III. The Amended Complaint further fails to adequately define the rights upon which Counts I through III seek recovery.[17] Counts I through III are, therefore, barred by the qualified immunity of the Individual Defendants. *See Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038–39; *Branch*, 14 F.3d at 452. Accordingly, Counts I through III are dismissed as against the Individual Defendants pursuant to Fed.R.Civ.P. 12(b)(6).

b. *42 U.S.C. § 1985*

■ As stated, Count IV seeks recovery against the Individual Defendants under 42 U.S.C. § 1985.[18] *See* Amended Com-

---

ing. *See id.*, ¶ 17. Biase does not, however, allege the manner in which the OTS or Individual Defendants prevented him from communicating with fellow shareholders in connection with the Shareholders Meeting.

Biase merely states the OTS and Individual Defendants launched the OTS Investigations subsequent to Biase's request for the Shareholder's Meeting. *Id.*, ¶ 18. It is not apparent that the OTS Investigations or the issuance of the OTS Subpoenas would have had any bearing on Biase's ability to communicate with his fellow shareholders. Indeed, courts in this circuit have held that investigatory activity, including the issuance of subpoenas, does not violate the First Amendment. *See Walling v. News Printing Co.*, 148 F.2d 57, 60–61 (3d Cir.1945) (Department of Labor investigation and subpoenaing of newspaper does not violate First Amendment), *aff'd*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946); *ACT–UP v. Walp*, 755 F.Supp. 1281, 1285 (M.D.Pa.1991) (police presence at meeting of organization is not constitutional violation).

The only Due Process right even plausibly implicated by the Amended Complaint is Biase's right to be free from selective or vindictive prosecution. Biase has not, however, alleged that the OTS Investigations even resulted in a prosecution or other legal action against him. *Cf. Davis v. Grusemeyer*, 996 F.2d 617, 628 (3d Cir.1993) ("A section 1983 malicious prosecution claim requires that the defendant 'initiate' a criminal proceeding that ends in plaintiff's favor."); *Rose*, 871 F.2d at 349 (same). To the extent Biase alleges the OTS Investigations damaged his reputation, such an interest is not protected by the Constitution. *See Paul v. Davis*, 424 U.S. 693, 708–12, 96 S.Ct. 1155, 1164–66, 47 L.Ed.2d 405 (1976); *Bryen v. Becker*, 785 F.Supp. 484, 486 (D.N.J.1991).

17. To date, Biase has not moved or otherwise applied for permission to further amend the Amended Complaint. It appears, in any event,

that further amendment would be inappropriate at this time.

At this time, when the Individual Defendants and the OTS have served a responsive pleading, Fed.R.Civ.P. 15 allows amendment of a pleading only in limited circumstances. Biase may only amend the Amended Complaint if he establishes the absence of undue or unexplained delay. *Dole v. Arco Chemical Co.*, 921 F.2d 484, 487 (3d Cir.1990). To date, Biase has not offered an explanation for his failure to amend the Amended Complaint, and has not even sought to amend his complaint in light of the instant motions.

Amendment of a pleading is also inappropriate where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). While, as stated, Biase has not submitted a proposed amendment, he has put forth certain allegations concerning the OTS Investigations and the OTS Subpoenas in his Opposition Brief. *See* Opp. Brief at 4–8. These allegations, however, do nothing to suggest the OTS Investigations or OTS Subpoenas were improperly motivated. Rather, the allegations contained in Biase's Opposition Brief merely provide details concerning the carrying out of the OTS Investigations. *See id.* Also, these allegations do nothing to define the constitutional rights Biase alleges were violated by OTS and the Individual Defendants. Based on the pleadings and arguments submitted thus far, it appears further amendment of the Amended Complaint would be futile.

18. It does not appear that Count IV seeks relief against the Individual Defendants in their official capacity. To the extent it does, Count IV is barred by the doctrine of sovereign immunity. As stated, a suit against an official in his official capacity is a suit against the sovereign. *See Graham*, 473 U.S. at 166, 105 S.Ct. at 3105. Also as stated, suits against the United States under section 1985 are barred by sovereign immunity. *See Hohri*, 782 F.2d at 245; *Timmons*,

plaint, ¶ 29. As stated, section 1985's three clauses prohibit several forms of conspiratorial activity in interference with a person's civil rights. *See generally* 42 U.S.C. § 1985. Biase does not identify the clause upon which Count IV relies.

Section 1985(1) prohibits activity interfering with the duties of an officer of the United States. *See* 42 U.S.C. § 1985(1). Biase has not alleged, and it does not appear, that he is a Federal officer. Biase could not, therefore, rely on section 1985(1).

Section 1985(2) prohibits conspiracy to obstruct justice or to threaten or otherwise intimidate a juror, witness or party to an action. *See* 42 U.S.C. § 1985(2). Biase has alleged no fact invoking these prohibitions. Biase could not, therefore, rely on section 1985(2).

■ Section 1985(3) prohibits several forms of conspiracy to deprive a person of his or her rights under the Fourteenth and Fifteenth Amendments. Generally, the provision prohibits the interference with a person's right to vote and to the equal protection of the laws. *See* 42 U.S.C. § 1985(3). In order to state a cause of action under section 1985(3), a plaintiff must, at a minimum, "allege[ ] that the conspiracy involved ... was motivated by racial or class-based animus." *Pratt v. Thornburgh,* 807 F.2d 355, 357 (3d Cir.1986), *cert. denied,* 484 U.S. 839, 108 S.Ct. 125, 98 L.Ed.2d 83 (1987); *see United Brotherhood of Carpenters and Joiners of America, Local No. 610 v. Scott,* 463 U.S. 825, 836–37, 103 S.Ct. 3352, 3360–61, 77 L.Ed.2d 1049 (1983); *Hurt v. Philadelphia Housing Authority,* 806 F.Supp. 515, 529 (E.D.Pa.1992).

"[T]he kind of class-based animus contemplated by section 1985(3) does not include

discrimination against classes defined by economic status or activity." *Hoai v. Vo,* 935 F.2d 308, 314 (D.C.Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992); *see Scott,* 463 U.S. at 838–39, 103 S.Ct. at 3361. It has, moreover, been held that "[section] 1985(3) may be invoked only as a remedy for discrimination which is based upon the plaintiff's *immutable characteristics,* such as race[, ethnicity] or gender." *Rourke v. United States,* 744 F.Supp. 100, 105 (E.D.Pa.1988) (emphasis added), *aff'd,* 909 F.2d 1477 (3d Cir.1990); *see Hauptmann v. Wilentz,* 570 F.Supp. 351, 385 (D.N.J.1983), *aff'd,* 770 F.2d 1070 (3d Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986); *see also Hicks v. Resolution Trust Corp.,* 970 F.2d 378, 382 (7th Cir.1992) (Section 1985(3) applies only to discrimination based on "characteristics—i.e. race, national origin or gender—which are traditionally part and parcel of discrete and insular minorities.").

■ The Amended Complaint fails to allege the Individual Defendants were motivated by any class-based animus, let alone animus based on Biase's race or other immutable characteristics. Indeed, the Amended Complaint fails to allege Biase was the victim of discrimination of any sort. The Amended Complaint, therefore, fails to state a cause of action against the Individual Defendants under section 1985(3). *See Pratt,* 807 F.2d at 357; *Hauptmann,* 570 F.Supp. at 385. Accordingly, Count IV is dismissed as against the Individual Defendants pursuant to Rule 12(b)(6).[19]

### 2. Count V: The FTCA

Count V, as stated, seeks recovery against the Individual Defendants in their individual capacities for the common law tort of abuse

---

672 F.2d at 1380. Accordingly, to the extent Biase's claim under section 1985 is asserted against the Individual Defendants in their official capacities, it is barred by the doctrine of sovereign immunity. *See Unimex,* 594 F.2d at 1062; *Kaufmann,* 840 F.Supp. at 648; *Proffitt,* 758 F.Supp. at 345.

**19.** As indicated, allegations of conspiracy require a certain quantum of specificity in pleading. *See Flanagan,* 783 F.Supp. at 928–29. Courts have,

in fact, applied a heightened standard of pleading to claims under section 1985(3). *See Rourke,* 744 F.Supp. at 104; *Hauptmann,* 570 F.Supp. at 385. The Amended Complaint, as stated, "contain[s] merely conclusory allegations of conspiracies" among the Individual Defendants. *Hauptmann,* 570 F.Supp. at 385; *see* Amended Complaint, ¶¶ 4–9. The failure of the Amended Complaint to plead a claim under section 1985(3) with the requisite specificity provides another basis for the dismissal of Count IV. *Hauptmann,* 570 F.Supp. at 385.

of process.[20] Section 2679 of the FTCA provides that Federal employees acting within the scope of their employment may not be held personally liable:

(b)(1) The remedy against the United States provided by [the FTCA] for injury of loss of property, or personal injury arising from the negligent or wrongful act or omission of any employee of the [Federal] Government while acting within the scope of his [or her] office *is exclusive of any other civil action or proceeding for money damages....*

(d)(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his [or her] office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of [the FTCA], and the United States shall be substituted as the party defendant.

. . .

(4) Upon certification, any action or proceeding subject to paragraph (1) ... shall proceed in the same manner as any action against the United States filed pursuant to [the FTCA] *and shall be subject to the limitations and exceptions applicable to those actions.*

28 U.S.C. § 2679(b)(1), (d)(1, 4) (emphasis added).

Section 2679 was enacted to

provide [F]ederal employees with absolute immunity from liability for common law torts committed within the scope of employment. Congress achieved this purpose by precluding direct actions against [F]ederal employees. Instead, the plaintiff's "exclusive remedy" is an action against the United States under the FTCA.

*Nadler v. Mann,* 731 F.Supp. 493, 495 (S.D.Fla.1990), *aff'd in part, rev'd in part on*

*other grounds,* 951 F.2d 301 (11th Cir.1992); *see Schrob v. Catterson,* 967 F.2d 929, 934 (3d Cir.1992); *Melo,* 912 F.2d at 639; *Leddy v. United States Postal Service,* 525 F.Supp. 1053, 1054 (E.D.Pa.1981); *Thomason v. Sanchez,* 398 F.Supp. 500, 504 (D.N.J.1975), *aff'd,* 539 F.2d 755 (3d Cir.1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977).

As indicated by the statute, a suit will fall under the restrictions of the FTCA if the Attorney General certifies that the defendant employee "was acting within the scope of his [or her] office or employment at the time of the incident out of which the claim arose...."[21] 28 U.S.C. § 2679(d)(1); *see Schrob,* 967 F.2d at 934. The Third Circuit has determined that such a certification by the Attorney General is subject to limited judicial review:

The scope certification is *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment, but it is not conclusive. *Thus, a plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it.*

*Schrob,* 967 F.2d at 936 (emphasis added); *see Haas,* 829 F.Supp. at 733.

Applying these principles to the facts at bar, it appears the Individual Defendants are entitled to invoke the protections of section 2679. The United States Attorney, the Attorney General's duly appointed designee, has certified that "each of the [Individual] [D]efendants ... was acting within the scope of his or her employment as an employee of the United States at the time of [the] incidents [alleged in the Amended Complaint.]" Employment Cert. at 1–2. Biase does not contest the United States Attorney's Employment Certification and has put forth no facts to suggest the Individual Defendants acted outside the scope of their employment.

**20.** It does not appear Count V seeks recovery against the Individual Defendants in their official capacities. As indicated, however, any such claim would be construed as one against the United States and would be barred by section 2680(h) of the FTCA. *See* 28 U.S.C. § 2680(h); *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105.

**21.** A certification under section 2679(d) may be made by the Attorney General's duly appointed designee. *See Haas v. Barto,* 829 F.Supp. 729, 733 (M.D.Pa.1993).

■ For the purposes of section 2679, the scope of a defendant's employment is to be determined "in accordance with the law of place where the act or omission occurred." *Melo*, 912 F.2d at 642; *see Haas*, 829 F.Supp. at 733. It appears from the Amended Complaint that the alleged actions of the Individual Defendants occurred in New Jersey. New Jersey law, therefore, determines the scope of the Individual Defendants' employment in this case. *See Melo*, 912 F.2d at 642.

■ Under New Jersey law:

An employee is acting within the scope of [his or her] employment if the action is "of the kind that [the employee] is employed to perform; it occurs substantially within the authorized time and space limits; and it is actuated, at least in part, by a purpose to serve the master."

*Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 771, 563 A.2d 31 (1989) (quoting Restatement (Second) of Agency § 228 (1958)); *see Abbamont v. Piscataway Township Board of Education*, 269 N.J.Super. 11, 26, 634 A.2d 538 (App.Div. 1993) (same).

■ Biase has put forth nothing, in either the Amended Complaint or the Opposition Brief, to suggest the Individual Defendants were acting outside the scope of their employment in conducting the OTS Investigations and issuing the OTS Subpoenas. As stated, in his Opposition Brief, Biase merely sets forth details of the OTS Investigations and the OTS Subpoenas. *See* Opp. Brief at 4–8. He does not suggest that the Individual Defendants were not authorized by OTS to issue subpoenas or to conduct investigations; nor does he suggest the OTS Investigation or the OTS Subpoenas were untimely or otherwise outside the authority of the Individual Defendants. *See Printing Mart*, 116 N.J. at 771, 563 A.2d 31. Absent any "specific facts" rebutting the Employment Certification, the Employment Certification will be accepted as a truthful account of the Individual Defendants' scope of employment. *See Schrob*, 967 F.2d at 936.

■ Because Count V seeks recovery against the Individual Defendants for actions taken within the scope of their employment, the FTCA provides Biase's exclusive remedy for the claim asserted therein. *See Schrob*, 967 F.2d at 934. As indicated, the FTCA requires that, where a Federal employee is sued for acts performed within the scope of his or her employment, the action "shall be deemed an action against the United States under the provisions of [the FTCA], and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). Accordingly, with respect to Count V, the United States is substituted for the Individual Defendants. *Id.* Therefore, all of the limitations and restrictions dictated by the FTCA with respect to a suit against the United States must apply to Count V. *See* 28 U.S.C. § 2679(d)(4).

■ As stated, the FTCA provides a limited waiver of the United States' sovereign immunity from suits in tort. Also as indicated, Congress has expressly withheld this waiver with respect to suits alleging, *inter alia*, abuse of process. *See* 28 U.S.C. § 2680(h). Because Count V seeks recovery for abuse of process, it is barred as against the United States, and as against the Individual Defendants, by the doctrine of sovereign immunity. *Id.; see supra* at 24. Accordingly, Count V must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1).

In summary, Counts I through III are barred as against the Individual Defendants by the Individual Defendants' qualified immunity; these counts must, therefore, be dismissed for failure to state a claim pursuant to Rule 12(b)(6). Count IV, as stated, fails to state a cause of action against the Individual Defendants under 42 U.S.C. § 1985 and, therefore, is also dismissed pursuant to Rule 12(b)(6). Finally, Count V is barred as against the Individual Defendants by the FTCA and is, accordingly, dismissed pursuant to Rule 12(b)(1).[22]

---

**22.** Because the Amended Complaint is dismissed as against the Individual Defendants pursuant to Rules 12(b)(1) and 12(b)(6), it is unnecessary to reach the Individual Defendants' contention that the Amended Complaint should be dismissed pursuant to Rule 12(b)(5) for insufficient service of process. *See* Individual Defendants' Brief at 25.

*Conclusion*

For the reasons stated, the Amended Complaint is dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).